# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 21-7006**

**September Term, 2021**

FILED ON: MARCH 4, 2022

GREGORY SMITH,
                              APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
                              APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00161)

---

Before: PILLARD and RAO, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

Gregory Smith sued the District of Columbia (the District) and two of its employees for damages due to his 23-day over-detention in a D.C. jail. After the district court denied in part the District's motion for summary judgment, *Smith v. District of Columbia*, 306 F. Supp. 3d 223, 233 (D.D.C. 2018), the parties settled Smith's common-law false imprisonment and negligence claims. They did not, however, settle his Fifth Amendment due process claim under 42 U.S.C. § 1983 or his claim for attorneys' fees, but agreed to resolve attorneys' fees by litigating whether the District was responsible under Section 1983 for Smith's unconstitutional over-detention. Following a bench trial on that issue, the court ruled in favor of the District, and Smith appeals. On appeal, the District does not dispute that Smith suffered an unconstitutional deprivation of liberty, but only whether a District policy or custom caused it.

1

The district court ruled against Smith on several alternative grounds, including by finding as a factual matter that neither the District's overall system for transmitting release orders, nor the specific MyJustis database flaw on which Smith ultimately rests his claim, was a cause-in-fact of Smith's over-detention. J.A. 536, 542, 556-57, 566-67. On appeal, even as he insists on his own interpretation of the evidence, Smith does not address the court's factfinding nor challenge it as clearly erroneous. We accordingly affirm. Because the court's factual finding of lack of cause-in-fact is consistent with the record evidence and supports the judgment, we need not opine on the court's various alternative grounds for its holding, including its descriptions of other requisites of a claim of municipal liability under Section 1983.

I.

Smith was arraigned in D.C. Superior Court on Saturday, March 15, 2014, on a misdemeanor charge of failure to appear in court for an earlier citation arraignment on an underlying misdemeanor charge from 2012. He pleaded not guilty and, facing a $100 cash bond condition of release, was committed to the jail. By Tuesday, March 18, 2014, counsel was appointed and Smith again appeared in court where the judge ordered him released in both cases. But the District's Department of Corrections (Corrections) did not see and failed to act on one of the two release orders. Instead, Corrections sent Smith back to the jail and did not discover its mistake until he was scheduled to appear before the court for a status hearing on April 9, following which Smith was released on April 10. The District ordinarily requires an investigation of cases of over-detention, but no such report was prepared in Smith's case and no employee was disciplined in connection with it.

Smith attributes his over-detention to the District's complicated process for releasing misdemeanor detainees. The district court's findings of fact describe the District's relevant policies and routines for processing release orders.

At the time of Smith's over-detention, the District released misdemeanor detainees directly from the Superior Court, provided the release could be processed before a cutoff time of approximately 3:30 p.m. If the processing of a release order was not complete by 3:30 and the detainee was returned to the D.C. jail, D.C. law generally required Corrections to effectuate the release within five hours of receiving the detainee from the custody of the U.S. Marshal at the court. D.C. CODE § 24-211.02a(a)(2).

Once a Superior Court judge decided an individual should be released, the courtroom clerk would give a copy of the release order to the court's scanning department to upload to a court database called CourtView. Inputs to CourtView also show up in a Corrections-accessible database called MyJustis. The U.S. Marshal would take a detainee expected to be released before 3:30 p.m. to the court's cellblock and hand-deliver a second copy of the release order to the Corrections satellite office in the courthouse, where a Legal Instrument Examiner (Examiner) would upload the release order to a Corrections database called the Transactions Management System (TMS). If a detainee was not ordered released in time for processing of the release to be completed by 3:30, the U.S. Marshal would hand-deliver the second copy of the release order to a

2

Corrections officer transporting detainees from the courthouse to the jail, who would then deliver the order in the "last-load envelope" to the District Records Office at the jail where an Examiner would upload it to TMS.

Either way, before Corrections carried out a court's release decision, an Examiner in the Record Office at the jail would check for other pending charges, outstanding warrants, or orders that could prevent release. Working from the release order entered in TMS, the Examiner would check information in the detainee's institutional file and records in MyJustis. If the Examiner saw a court-ordered release listed in a MyJustis docket without an accompanying image of the release order itself, the Examiner would contact the court's Quality Assurance office to obtain a copy of the release order via email or fax. In addition to such safeguards against erroneous release, Corrections had a countervailing safeguard against wrongful detention: a requirement that Examiners processing detainees returning from court verify the existence of an applicable commitment order or prisoner-return order before remitting the person to custody. When a release order is found in MyJustis and no contrary commitment or return order appears in the database—relating, for example, to a different case—the individual is cleared for release.

In Smith's case, things went very wrong. Despite the Superior Court judge's decision to release him, and the absence of any order to return Smith to the jail, he was returned to jail and not cleared for release.

Smith testified at his deposition that, once at the jail, he told a corrections officer, "I'm supposed to be released, what's going on?" but the officer responded, "[I]f you're here, you're supposed to be here . . . you're not going anywhere," and "[I]f you're here, they know you're here." J.A. 504-05 ¶¶ 48-49; *accord* J.A. 535-36. Nothing in the record disputed that testimony. However, because Smith did not testify at the trial nor was that portion of his deposition testimony proffered to be admitted in evidence for the bench trial, the court declined to make any such finding of fact.

The trial focused on the information flow from the Superior Court to the Department of Corrections. The district court found that the court's scanning department uploaded both release orders to CourtView at 1:26 p.m. and 1:28 p.m. Although that was well before 3:30 p.m., and the release order apparently was first referred to the Corrections satellite office in the courthouse, Smith was not released directly from the courthouse. A Corrections Examiner at Superior Court uploaded the 2014 release order to TMS at approximately 5:30 p.m. Examiner Jack Jones, stationed at the jail, accessed that 2014 order in MyJustis and cross checked it with the order in TMS at around 6:50 p.m. that day. Jones did not recall seeing any release order relating to the 2012 misdemeanor case. Smith's institutional file reflected that he was held on two cases, but the Examiner's review of the file and documents up to that point did not inform him whether Smith had been in court in the 2012 case that day as well. J.A. 505 ¶¶ 56-57. Because Jones only processed the release order for the 2014 case and only did so later in the afternoon, Smith was not cleared for release from the courthouse, but was returned to the jail. Corrections effectively continued to hold Smith on the 2012 charge.

3

There was no evidence confirming whether or how his Superior Court release orders accompanied Smith on the bus back to the jail in the "last-load envelope." Discovery later revealed that the paper release order for the 2012 case was timestamped as received by the Records Office at the jail at 9:33 p.m. on March 18. But no Examiner at the jail processed that second release order to effectuate Smith's release at that time, and the District still "does not know how it received the release order in the 2012 case." J.A. 509 ¶ 67.

Smith argued at trial that a known problem of delay in the MyJustis database was the reason Jones did not find and process the order in the 2012 case, and that the District's policy of relying on the MyJustis system without accounting for known delays establishes the District's responsibility under Section 1983.[1] The court found that the District was on notice that MyJustis did not always promptly reflect information the clerk at the Superior Court added to CourtView, but instead often had a 1- to 2-day delay. The District "did not require that the [Examiner] check the inmate's institutional file the 'next day' or 'go back two days later to check My JUSTIS to see whether or not the docket was updated.'" J.A. 501 ¶ 37 (crediting trial testimony of Examiner Jack Jones at J.A. 415-16). The court further found that "in 2014, it was a 'widespread practice' [of the District] 'to rely on My JUSTIS in verifying whether or not a prisoner should be released.'" J.A. 501 ¶ 34 (citing Jones's trial testimony). And the court credited as sincere Jones's testimony that, in light of the familiar time lag in MyJustis, he later inferred that when he checked the database in relation to the release order on Smith's 2014 charge, "[MyJustis] must not have included the release order from the 2012 case because if it had been there, he would have processed it." J.A. 506 ¶ 58.

Smith contended that Jones's testimony confirmed a known flaw in the District's computerized systems that caused his over-detention. He also pointed to deposition testimony of Corrections Program Administrator Jeanette Myrick that "system failure" was the cause of Smith's over-detention and that the Corrections employees who handled Smith's release did so in accord with department policies. Smith Br. at 18-19. He therefore contends that the District's knowing use of a flawed system of processing detainee releases caused his constitutional harm.

The district court held that all of Smith's arguments "fail at causation." J.A. 542; *see also* J.A. 556 (holding that "Plaintiff did not establish the necessary causation in fact"). The court found as a factual matter that no identified D.C. custom or practice caused Smith's constitutional injury. Stressing that "Jones ha[d] no present recollection of what MyJustis showed when he accessed it on March 18, 2014," the court declined to infer, as Jones had, that a MyJustis delay prevented him from seeing and processing any order relating to the 2012 charge. J.A. 506 ¶ 58. The court noted reasons to doubt Jones's "somewhat speculative" inference, J.A. 559, including that Smith's exhibit of the MyJustis docket for March 18, 2014, showed the second order along with the first. J.A. 560. Although the exhibit was made later, and there is "no evidence as to when [the order on the 2012 case] was first available to be used" by a MyJustis viewer, the court thought it "odd" that "the other order issued by the same judge just two minutes later . . . did make it to MyJustis" in time for Jones to see it there, causing the court to question "the basis to assume there

---

[1] The District objected that Smith's focus on the MyJustis delay was a new theory that Smith had failed to preserve by raising it earlier; although the district court expressed concerns on the point, it eschewed reliance on forfeiture.

was a time delay for one and not the other." J.A. 559-60. The court deemed human error the more likely explanation.

The court also addressed the role of District policy and practice requiring a detainee not released directly from the Superior Court to be accompanied back to the jail by a hand-delivered paper copy of orders in his case. The court noted that "here there is evidence showing that a paper order from the 2012 case did, in fact, make [its] way to the jail on that date." J.A. 561. Examiners were present at the jail then, and District policy called for them to process the arriving orders. J.A. 561. Because there was no showing of a systemic shortcoming behind the failure of personnel at the jail to release Smith pursuant to the paper release order, the court concluded that "human error, failure to pay attention to the paper order," was the more likely cause of the error. J.A. 561. The district court also acknowledged the District's policy that "a prisoner is not supposed to be received back into the jail without a prisoner return." J.A. 562. But the failure to adhere to that policy in Smith's case did not reflect any identified flaw in the extant District policy, nor had Smith established deliberate indifference to a known need for a better policy. J.A. 548, 550, 554. Here, too, the court was unable to credit Smith's Section 1983 theory over "human errors related to the handling of paper" as the cause of his constitutional injury. J.A. 563.

The court thus denied Smith's Section 1983 claim and corresponding claim for attorneys' fees. J.A. 536, 542, 556-57, 566.

II.

On appeal from a judgment entered after a bench trial, we review factual findings for clear error and legal conclusions *de novo*. *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010). To establish Section 1983 liability, a plaintiff must prove that a municipal custom or policy was the "moving force" behind a constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Smith here challenges the way the District processed the Superior Court's orders to release him from jail—a system that he appears to characterize as formal policy combined with practices so regularly followed as to become custom.

Showing that a municipality's policy or custom was the "moving force" requires proof that it was the cause-in-fact and the proximate cause of the constitutional violation. *Smith v. District of Columbia*, 413 F.3d 86, 102-03 (D.C. Cir. 2005) (citing *Morgan v. District of Columbia*, 824 F.2d 1049, 1058 (D.C. Cir. 1987)). To establish cause-in-fact, a plaintiff must show that his harm would not have occurred but for the challenged municipal custom or policy. *Smith*, 413 F.3d at 103. To establish proximate cause, a plaintiff must show the harm was reasonably foreseeable, not the result of a "chain of events [that] is highly extraordinary in retrospect." *Id.* (quoting *Parker v. District of Columbia*, 850 F.2d 708, 714 (D.C. Cir. 1988)); *see Morgan*, 824 F.2d at 1062-63; *see also* J.A. 543 (citing *Smith* and *Parker*).

Smith argued that it was the District's policy of not requiring Examiners to re-check MyJustis, notwithstanding the known delays in that program, that caused his over-detention.

Smith Br. at 27-30. The district court rejected that theory on several alternative grounds, including lack of evidence of cause-in-fact. J.A. 556-57, 567.

On appeal, Smith does not challenge any district court factual finding as clearly erroneous. We thus accept the court's findings and cannot re-weigh the evidence. Smith nonetheless reargues his case using evidence the district court either found unpersuasive or unsupported in the record. In particular, Smith urges us to overturn the district court's judgment based on (1) Jones's testimony describing what MyJustis showed on March 18, Smith Br. at 10-11, 27-29, 31, 33; (2) Myrick's deposition testimony that all District employees "complied with [Department of Corrections's] policies in processing Mr. Smith's release" and her statement that "system failure" caused Smith's over-detention, Smith Br. at 31 (citing Myrick's deposition transcript at J.A. 274-75), 52 (citing Myrick's deposition transcript at J.A. 179); and (3) MyJustis's known delay evidenced by the District's written policy acknowledging the delay, Smith Br. at 29, and lead Examiner Robilyn Brown's testimony "that the MyJustis system had a delay, rendering it inaccurate," Smith Br. at 31 (citing Brown's deposition transcript at J.A. 285 and trial testimony at J.A. 432).

The district court considered that evidence and found it fell short of supporting municipal liability under Section 1983. The evidence did not make it more likely than not that a custom or policy of the District—as opposed to individual employee errors—caused Smith's over-detention. The court viewed Jones's testimony as "speculative," finding that he merely testified to what he believed he would have done if the order regarding the 2012 charge was in MyJustis when he checked it; by the time he testified almost five years after the fact, Jones acknowledged that he lacked any present recollection of what was on MyJustis the day the Superior Court entered the release orders. J.A. 505-06, 559-60. The court specifically declined to credit Myrick's deposition testimony regarding employees' compliance with District policies as "argumentative, not a statement of fact," J.A. 512, and it held that Myrick spoke only generally about what causes over-detentions in terms "too vague" to prove causation in Smith's case. J.A. 558; *see also* J.A. 514, 559. The district court found that MyJustis had a known delay, J.A. 501, but concluded that delay did not explain Smith's over-detention where isolated human error was the more likely reason for inaction regarding the second release order. J.A. 561, 563. Because Smith did not demonstrate the district court's findings of fact on causation were clearly erroneous, he cannot establish municipal liability even under his reading of the standard for proximate causation; accordingly, we decline to address the district court's ruling on proximate cause.

Smith's other arguments on appeal similarly fail. He contends that the district court considered evidence it previously excluded, including a 2018 report on inmate over-detentions and the release process in the District (the Moss Report), an internal audit from the District's JACCS system showing that the 2012 release order was neither uploaded to the system nor processed, and facts relevant in the *Barnes v. District of Columbia* decision. He also faults the district court for commenting on the lack of expert evidence to prove causation. But any error the district court committed in mentioning that evidence or the lack thereof was harmless as it relied on substantial alternative evidence previously described in its holding. We also see no error in the summary judgment ruling's identification of three distinct theories of liability because Smith's own briefing

described the theories as separate. *Smith v. District of Columbia*, 306 F. Supp. 3d at 247-56; J.A. 540-41. We therefore affirm the district court's decision.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

## Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk